JOHN SEMRAU, Plaintiff, v. FIRST CHICAGO CORPORATION *et al.*, Defendants (Turner Construction Company, Third–Party Plaintiff-Appellant; American Bridge and Iron Company, Third–Party Defendant-Appellee).

First District (5th Division) No. 86—1073

Opinion filed August 7, 1987.

Crooks & Gilligan, Ltd., of Chicago (John W. Gilligan, of counsel), for appellant.

Terrence E. Kiwala and Marc D. Ginsburg, both of Rooks, Pitts & Poust, of Chicago, for appellee.

JUSTICE LORENZ delivered the opinion of the court:

Third-party plaintiff Turner Construction Company (Turner) appeals from a circuit court order granting summary judgment for third-party defendant American Bridge and Iron Division of United

States Steel Corporation (U.S. Steel) on Turner's third-party complaint for contribution.

We affirm.

John Semrau, an employee of U.S. Steel, brought suit against several parties, including Turner, for injuries he allegedly sustained when an elevator door struck his elbow as he was boarding that elevator at the construction site of Three First National Plaza. Semrau alleged, *inter alia*, that Turner, as one of the parties in charge of the construction, had failed to provide Semrau with a safe workplace and had improperly managed and controlled the premises.

Turner then filed a third-party suit against U.S. Steel for contribution, alleging that plaintiff was employed by U.S. Steel and that plaintiff's injuries were caused by one or more acts or omissions of U.S. Steel, including its failure to warn plaintiff of dangerous conditions, failure to supervise the work on the premises, and failure to provide adequate safeguards to protect the plaintiff from injury. In response U.S. Steel filed a motion for summary judgment, asserting that the elevator in question was owned by Turner and operated by a Turner employee, with U.S. Steel having nothing to do with the operation of the elevator. The motion also stated that it was undisputed that the accident happened when the elevator operator, without warning, closed the door while Semrau was still entering the elevator.

Attached to the motion were the depositions of Semrau and Leonard Jackson, regional project manager for Riverside Corporation, which was also involved in the construction project. Also attached was the affidavit of Eugene Sass, a U.S. Steel general manager.

In his deposition Semrau stated that the accident occurred as he was getting on the elevator with fellow workers. The elevator was not completely full, but the workers already inside had to make room for him, and he had to turn sideways to get on. He was still in the process of stepping in deeper when the elevator operator started to lower the overhead elevator door, which then struck his elbow.

According to Semrau, U.S. Steel required that all personnel use that particular elevator and he had used it at least seven times a day for four months. He knew of nothing that was broken in the elevator. He also recalled no instructions posted in the elevator. At U.S. Steel's weekly safety meeting for its employees he had never been instructed on how to use the elevators. According to Semrau the elevator operator controlled the door; the operator had to pull a rope in order to bring it down. It was also the operator who determined when enough people had boarded and who would then tell people not to board. At the time of the accident there were about 18 people on board. At the

time the door struck him, Semrau was unable to see the operator, who was about six feet away in the elevator, because there were people standing between them.

In his deposition Leonard Jackson, regional project manager for Riverside Corporation, stated that Riverside had supplied, erected and maintained the elevator in question but the general contractor, Turner, supplied the elevator operators. Jackson also stated that the capacity of the elevator was 42 people, a fact contained on a sign inside the elevator. Jackson stated that there was a safety sign intended for the operator inside the elevator.

The affidavit of Eugene Sass, a U.S. Steel general manager responsible for coordination of the construction, stated that U.S. Steel had nothing to do with the maintenance or operation of the personnel elevator at issue.

In response to U.S. Steel's motion, Turner relied solely on a U.S. Steel accident report, signed by Semrau's foreman. In that report it was stated that safety rule 2.17 had been violated, the accident was caused by "carelessness," and the safety manual covering this type of accident should be reviewed at future meetings. The circuit court subsequently granted the motion for summary judgment and then denied Turner's motion for reconsideration.

 Our function in reviewing a summary judgment order is to determine whether a material factual dispute exists. (*Ray v. City of Chicago* (1960), 19 Ill. 2d 593, 169 N.E.2d 73.) In so doing we are charged with construing the evidentiary material strictly against the movant and liberally in favor of the opposing party. (*Holbrook v. Peric* (1984), 129 Ill. App. 3d 996, 473 N.E.2d 531.) If the evidence in the pleadings and affidavits before the court on the motion of summary judgment would have constituted all of the evidence before the court and if based on that evidence a court would be required to direct a verdict, then summary judgment was properly entered. *Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 272 N.E.2d 497.

██ In this cause we find that the evidence before the court established no liability by U.S. Steel for this accident. Although the determination of proximate cause ordinarily is a question of fact, it will be decided as a matter of law where reasonable men would not disagree on the inferences to be drawn from the undisputed facts. (*Holbrook v. Peric* (1984), 129 Ill. App. 3d 996, 473 N.E.2d 531.) Here it is undisputed that U.S. Steel had no responsibility for the maintenance or operation of the elevator. It is also undisputed that plaintiff was injured when the elevator operator, a Turner employee, closed the door on him as plaintiff was still boarding the elevator.

Turner apparently seeks to create an issue of fact out of the U.S. Steel accident report, but that document's bare reference to a violation of a safety rule, without even setting out that rule, cannot create a causation issue where the undisputed facts of the accident itself establish none.

Accordingly we affirm the judgment of the circuit court.

Affirmed.

SULLIVAN, P.J., and MURRAY, J., concur.